# United States Court of Appeals for the Federal Circuit

---

**IN RE EDWARD R. REINES,**
*Respondent.*

---

14-MA004 (14-4)

---

Before PROST, *Chief Judge*, NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, and HUGHES *Circuit Judges.*

PER CURIAM.

## ORDER

Pursuant to Federal Rule of Appellate Procedure 46, it is hereby ordered, adjudged, and decreed that Edward R. Reines, a member of the bar of this court, is publicly reprimanded for his misconduct in disseminating an email to clients and prospective clients that he received from then-Chief Judge Rader.

I

Respondent is a member of the bar of this court, having been admitted to practice on October 1, 1993. At that time, he took an oath to "comport [himself] as an attorney and counselor of this court, uprightly and in accordance with the law . . . ." Respondent has appeared frequently before this court, and has served as the chair of the court's Advisory Council.

This matter had its genesis in oral argument held on March 4, 2014, in two companion cases: *Promega Corp. v.*

*Life Technologies Corp.*, 2013-1011 and *Promega Corp. v. Applied Biosystems, LLC*, 2013-1454. Respondent represented the appellants in both cases on appeal, and presented the oral arguments.

The next day, on March 5, 2014, at 3:24 p.m. EST, then-Chief Judge Rader sent a private email to the respondent.[1] In the email, then-Chief Judge Rader, who was

---

[1] The email is included as Attachment A to this order. The subject line of the email was "Congratulations." The text of the email is as follows:

Ed,

On Wednesday, as you know, the judges meet for a strictly social lunch. We usually discuss politics and pay raises. Today, in the midst of the general banter, one of my female colleagues interrupted and addressed herself to me. She said that she was vastly impressed with the advocacy of "my friend, Ed." She said that you had handled two very complex cases, back to back. In one case, you were opposed by Seth Waxman. She said Seth had a whole battery of assistants passing him notes and keeping him on track. You were alone and IMPRESSIVE in every way. In both cases, you knew the record cold and handled every question with confidence and grace. She said that she was really impressed with your performance. Two of my other colleagues immediately echoed her enthusiasm over your performance.

I, of course, pointed out that I had taught you everything you know in our recent class at Berkeley together . . . NOT! I added the little enhancement that you can do the same thing with almost

not a member of either panel, stated that judges on the *Promega* panels at a judges-only lunch had praised respondent's performance at the oral arguments. The email referred to a special friendship between Mr. Reines and then-Chief Judge Rader. In the email, then-Chief Judge Rader referred to Mr. Reines as "my friend" and said, "[i]n sum, I was really proud to be your friend today!" Then-Chief Judge Rader closed with "[y]our friend for life." The email also added an effusive endorsement by then-Chief Judge Rader himself and contained an invitation to share the email with others.

Respondent then circulated the email to no fewer than 35 existing and prospective clients, with accompanying comments soliciting their business based on the email. The majority of the more than 70 individuals who received it were lawyers, but some were non-lawyers. Respondent told some recipients that this type of feedback

---

any topic of policy: mastering the facts and law without the slightest hesitation or pause!

In sum, I was really proud to be your friend today! You bring great credit on yourself and all associated with you!

And actually I not only do not mind, but encourage you to let others see this message.

Your friend for life, rrr

We note that the email contained certain inaccuracies, as then-Chief Judge Rader has himself noted. Letter from then-Chief Judge Randall Rader to Federal Circuit Judges (May 23, 2014) ("The email reported, with certain inaccuracies, a conversation I had with another member of the court . . . .").

was "unusual" or "quite unusual." Reines Ex. 4; Ex. 8; Ex. 44; Ex. 45.

On June 5, 2014, we ordered that respondent show cause as to why his actions associated with the email did not warrant discipline by this court, *inter alia*, because they violated Rule 8.4(e) of the American Bar Association's Model Rules of Professional Conduct. The Show Cause order is included as Attachment B to this order. Model Rule 8.4(e) provides that it is professional misconduct for a lawyer to "state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law." Model Rules of Prof'l Conduct R. 8.4(e) (2014).

Mr. Reines responded to the show cause order on July 7, 2014. Respondent acknowledged forwarding the email to clients and potential clients. Mr. Reines argued, *inter alia*, that he did not imply any improper influence under Model Rule of Professional Conduct 8.4(e); according to Mr. Reines, he forwarded the email "because information about [his] skill at oral advocacy is an appropriate consideration in the selection of counsel." Decl. of Edward R. Reines ¶ 19. Respondent also argued that ordering discipline would be unconstitutional under the First Amendment. Mr. Reines included statements of experts in legal ethics to support his arguments. Mr. Reines did not request a hearing in this matter pursuant to Federal Rule of Appellate Procedure 46(c) and Federal Circuit Attorney Discipline Rule 5(b).

Because of the importance of this matter, we determined to consider it en banc.

## II

It is initially important to review the source of the court's authority. Federal Rule of Appellate Procedure 46 provides that a member of the bar of a court of appeals is

subject to suspension or disbarment if he or she "is guilty of conduct unbecoming a member of the court's bar." Fed. R. App. P. 46(b)(1)(B). Similarly, any attorney who practices before the court may be subject to discipline "for conduct unbecoming a member of the bar." *Id.* 46(c). The Supreme Court has interpreted Rule 46 to "require[] members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice." *In re Snyder*, 472 U.S. 634, 644–45 (1985). This court and other circuits have imposed discipline under Federal Rule of Appellate Procedure 46.[2]

In determining whether an attorney's conduct constitutes "conduct unbecoming a member of the bar" under Rule 46, courts are to be guided "by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *Id.* at 645. These sources of guidance include the code of professional conduct promulgated by the attorney's home state bar. While state ethics rules "do[] not by [their] own terms apply to sanctions in the federal courts," a federal court "is entitled to rely on the attorney's knowledge of the state code of professional conduct . . . ." *Id.* at 645 n.6. Here, respondent is a member of the State Bar of California. We have also adopted Federal Circuit Attorney Discipline Rules, establishing procedures for attorney discipline, but not elaborating on the substantive standard for imposing discipline.

We conclude that with respect to the email dissemination we should look to the Model Rules of Professional Conduct rather than to the rules of any individual state. We note that other circuits have imposed discipline by

---

[2] *See, e.g., In re Violation of Rule 28(D)*, 635 F.3d 1352, 1360–61 (Fed. Cir. 2011); *In re Girardi*, 611 F.3d 1027, 1035 (9th Cir. 2010); *In re Mann*, 311 F.3d 788, 790–91 (7th Cir. 2002).

referring to the Model Rules of Professional Conduct.[3] We think that Model Rule 8.4(e) sets forth the relevant standard.

## III

We consider whether disseminating the email violated Model Rule of Professional Conduct 8.4(e). Rule 8.4(e) states that "[i]t is professional misconduct for a lawyer to . . . state or imply an ability to influence improperly a government agency or official to achieve results by means that violate the Rules of Professional Conduct or other law." Model Rules of Prof'l Conduct R. 8.4(e) (2014 ed.). "A lawyer who suggests that he or another lawyer is able to influence a judge or other public official because of a personal relationship violates Rule 8.4(e)." Lawyers' Manual on Prof'l Conduct (ABA/BNA), at 101:703 (Mar. 30, 2011). Respondent argues that the dissemination of the email was not improper because it did not suggest an improper influence but instead was an "unusually generous compliment from an unnamed jurist . . . about [respondent's] skill at oral advocacy." Decl. of Edward R. Reines ¶ 19.

While the dissemination of complimentary comments by a judge contained in a public document would not itself

---

[3] *See Girardi*, 611 F.3d at 1035 (imposing discipline for violations of Model Rule 3.1 and state bar rules); *In re Cook*, 551 F.3d 542, 554 (6th Cir. 2009) (affirming district court disbarment, citing violations of Model Rules 8.4, 1.8, and 4.2 in support of discipline); *In re Cordova-Gonzalez*, 996 F.2d 1334, 1335 (1st Cir. 1993) (noting that attorney also violated Model Rule 1.8(a) in affirming disbarment imposed by district court for violation of Model Rule 8.4(d)).

constitute a violation of Model Rule 8.4(e),[4] we conclude respondent's actions violated the rule. First, the email both explicitly describes and implies a special relationship between respondent and then-Chief Judge Rader. The text of the email describes a close friendship between the two. The email included the language, "[i]n sum, I was really proud to be your friend today," and closed with "[y]our friend for life." The very fact that the email was a private communication rather than a public document implies a special relationship, and then-Chief Judge Rader's sharing of internal court discussions (which would be ordinarily treated as confidential) about the lawyer's performance in a pending case implies an unusually close relationship between respondent and the then-Chief Judge. Respondent's comments transmitting the email also convey a special relationship with then-Chief Judge Rader and the Federal Circuit. Respondent described the email as "unusual" or "quite unusual" in some of his accompanying comments, Reines Ex. 4; Ex. 8; Ex. 44; Ex. 45, and referenced his "stature" within the court and his role as chair of the Federal Circuit's Advisory Council, Reines Ex. 38.

Second, recipients of the email also viewed it as suggesting the existence of a special relationship between respondent and then-Chief Judge Rader and perhaps other judges of the court. Several responses referred to the high opinion then-Chief Judge Rader and judges in general had for Mr. Reines. [5] Other responses specifically

---

[4] *See, e.g.*, *Public Citizen, Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212, 221–22 (5th Cir. 2011); *Alexander v. Cahill*, 598 F.3d 79, 92 (2d Cir. 2010); *see also Dwyer v. Cappell*, 762 F.3d 275, 283–84 (3d Cir. 2014).

[5] *See* Reines Ex. 15 ("it's clear [judges] hold you in high regard—you easily engage in discussions with them

referenced the friendship between respondent and then-Chief Judge Rader.[6]

Third, the transmission of the email did more than suggest that respondent should be retained because of his superior advocacy skills. It suggested that his special relationship with the court should be taken into account. Respondent touted his role as chair of this court's Advisory Council, and stated that his "stature" within the court had helped "flip" a $52 million judgment in favor of his client and that he "would love to help [the recipient of his message] do the same." Reines Ex. 38. Another lawyer in respondent's firm in forwarding the email stated that respondent "knows the judges extremely well." Reines Ex. 49. Albeit respondent noted that he did not approve of the communication, he took no steps to advise the recipient of his disapproval. Decl. of Edward R. Reines ¶ 21.

Fourth, in sending the email to clients and prospective clients, respondent sought to directly influence their decisions about retaining counsel. He typically stated, "[a]s you continue to consider us for your Federal Circuit needs, I thought the below email from Chief Judge Rader

---

and they often hang on your words and are eager to gain insights from you"); Ex. 15 ("it was completely evident in the event in your offices last month that the judges had an enormous amount of respect for you"); Ex. 16 (the email "speaks of the high regard he and others have for you").

[6] *See* Reines Ex. 28 ("I share with Judge Rader great admiration for your legal acumen, as well as the honor of your friendship."); Ex. 40 ("It's clear [then-Chief Judge Rader]'s an enormous fan."); Ex. 48 (then-Chief Judge Rader seemed like "a pretty cool dude and a great friend too").

might be helpful." Reines Ex. 11.[7] Prospective clients likewise stated that they would consider it in making retention decisions.[8]

Finally, the email itself and respondent's comments accompanying the sending of the email suggested that Federal Circuit judges would look favorably on the retention of respondent. Then-Chief Judge Rader invited respondent to distribute the email to others. Respondent suggested that clients should "listen[] to . . . the Federal Circuit judges[.]" Reines Ex. 30.

It would blink reality not to view respondent's action as suggesting his retention because his special relation-

---

[7] Reines included the same language in many of his emails. *See* Reines Ex. 3; Ex. 10; Ex. 13; Ex. 15; Ex. 16; Ex. 17; Ex. 19; Ex. 20; Ex. 21; Ex. 22; Ex. 23; Ex. 24; Ex. 29; Ex. 30; Ex. 32; Ex. 33; Ex. 34; Ex. 35; Ex. 36; Ex. 39; Ex. 41; Ex. 42; Ex. 43; Ex. 46; Ex. 48 (all containing the same or similar language.); *see also* Reines Ex. 4 ("I would be delighted to work with you again should that fit your needs."); Reines Ex. 8 ("With these appeals completed, I'm hopeful that we will continue to work with TF and the Life unit, notwithstanding the exciting changes. Your support in that regard would of course also be appreciated.").

[8] *See* Ex. 3 ("I will certainly keep it in mind"); Ex. 19 ("Will keep [the email] here. Very useful."); Ex. 22 ("I'm definitely interested in learning more about Weil's appellate practice."); Ex. 30 ("[A colleague] was just saying the same thing recently and suggested we find a way to get you more involved with our appeal strategies and Fed Cir activities."); Ex. 39 ("we will keep your firm in mind going forward"); Ex. 41 ("we will definitely keep you in mind"); Ex. 46 ("We will keep you in mind, for sure, in our trips to the Federal Circuit.").

ship would help to secure a favorable outcome at the Federal Circuit. Under these circumstances, forwarding the email to clients and potential clients "impl[ies] an ability to influence improperly a government agency or official to achieve results by means that violate the Rules of Professional Conduct or other law." Model Rules of Prof'l Conduct R. 8.4(e) (2014).

IV

The next question is what discipline should be imposed.

In determining the discipline to impose, we look to "the existence of any aggravating or mitigating factors." Model Rules for Lawyer Disciplinary Enforcement R. 10(C)(4). In this respect, we consider that respondent is generally well-regarded in the legal community and has rendered important service to this court as the chair of its Advisory Council and in other capacities. It appears that he has never previously been disciplined. Respondent has recognized that "it was a mistake to distribute the Email, and [he] apologize[d] for having done so." Personal Statement of Edward E. Reines. The violation involved an implicit suggestion rather than an explicit statement of ability to influence. Then-Chief Judge Rader's invitation to share the message with others also mitigates the impropriety of the respondent's action though it does not excuse it.

We note, however, that we are troubled by certain statements by Mr. Reines seeking to minimize his relationship with then-Chief Judge Rader. Certain record facts suggest that the relationship was closer than Mr. Reines's submissions indicate, suggesting that Mr. Reines did not fully describe the nature and extent of the relationship. Finally, the fact that Mr. Reines circulated the email extensively and that it became a matter of general public knowledge warrants a public response by this court.

Under the circumstances, and considering all the relevant circumstances, we conclude that a public reprimand is the appropriate discipline.

V

Respondent argues that the First Amendment protects disseminating compliments received from judges and makes it unconstitutional to subject him to discipline.

The Supreme Court has held that attorney advertising may not be "subjected to blanket suppression." *Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 (1977). In *Bates*, the Court held that advertisements that listed legal services and corresponding prices could not be restricted. *See id.* at 384; *see also In re R.M.J.*, 455 U.S. 191, 205–06 (1982) (state could not ban an attorney from sending mailings about an office opening to a general audience); *In re Primus*, 436 U.S. 412, 422 (1978) (state could not discipline sending a targeted letter "communicating an offer of free assistance by attorneys associated with the ACLU" in order to "express personal political beliefs and to advance the civil-liberties objectives of the ACLU, rather than derive financial gain"); *Zauderer v. Office of Disciplinary Council of Supreme Court of Ohio*, 471 U.S. 626, 645 (1985) (state could not impose discipline for newspaper advertisements which were "easily verifiable and completely accurate").

But the right to communicate with clients and prospective clients is not unfettered. In *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978), the Court upheld discipline against a lawyer for in-person solicitation of clients, recognizing the state's "particularly strong" interest in attorney conduct. *Ohralik*, 436 U.S. at 449, 460. The Supreme Court also upheld the constitutionally of a state's "30-day restriction on targeted direct-mail solicitation of accident victims and their relatives," recognizing the bar's "substantial interest both in protecting injured [citizens] from invasive conduct by lawyers and in pre-

venting the erosion of confidence in the profession . . . ." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 635 (1995).

A lawyer's dissemination of compliments contained in judicial opinions was addressed in *Dwyer v. Cappell*, 762 F.3d 275 (3d Cir. 2014). The Third Circuit held that an attorney-conduct guideline banning advertising with quotations from judicial opinions unless the opinions appear in full was unconstitutional. *Id.* at 276. But respondent cites no authority and we are aware of none which calls into question the validity of Model Rule 8.4(e) or recognizes a right to suggest a special relationship with a judge to improperly influence a court.

As the Supreme Court recognized in *Ohralik* and *Florida Bar*, a strong interest exists in protecting the integrity of the legal profession and in protecting the public from misleading commercial speech by attorneys. *See Ohralik*, 436 U.S. at 460; *Fla. Bar*, 515 U.S. at 635. The compliments here were centered in a private communication and both stated and implied a special relationship between the respondent and then-Chief Judge Rader. The comments to existing and potential clients invited respondent's retention in future matters based on this relationship. Attorney speech which "state[s] or impl[ies] an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law," Model Rules of Prof'l Conduct R. 8.4(e) (2014), is either misleading (because the attorney has no ability to influence the official) or, if true, solicits business based on an offer to improperly influence the public official.

## VI

In the course of considering the email matter discussed above, we considered another matter relating to Mr. Reines. This additional matter is separate from and does not directly involve the email matter discussed above. This matter concerns the exchange of items of

value between Mr. Reines and then-Chief Judge Rader. On Mr. Reines's side, he provided a ticket for one concert, at another concert arranged for upgrading to a standing area near the stage, and arranged for backstage access for then-Chief Judge Rader at both. Then-Chief Judge Rader paid for accommodations. This occurred while Mr. Reines had cases pending before this court. We do not decide whether Mr. Reines's actions violated standards of professional responsibility. We have decided to refer this separate matter and the underlying relevant documents to the California bar authorities for their consideration.

In the ordinary course, having concluded that a public reprimand is warranted, we would disclose the full record of proceedings. See Fed. Cir. Attorney Disc. R. 10(b). We are authorized, however, to maintain confidentiality of portions of the record. In referring this matter to the California bar authorities, we have determined to enter a protective order and to place the filings relating to the matter under seal since this does not concern a matter as to which we have imposed discipline. Federal Circuit Attorney Discipline Rule 10(b) allows for placing a "permanent protective order prohibiting the disclosure of any part of the record to protect the interest of a complainant, a witness, a third party or nonparty, or the attorney" even after an order has issued. Fed. Cir. Attorney Disc. R. 10(b). The California rules also provide for confidentiality during the period of investigation. Cal. Bus. & Prof. Code § 6086.1(b). We leave it to the California bar authorities whether and when such materials should be disclosed.

Accordingly,

IT IS ORDERED THAT:

(1)     Respondent is publicly reprimanded, and the pleadings related to the show cause order are placed on the public record;

(2)     Respondent shall send copies of this Order to all courts or jurisdictions in which he is admitted; and

(3)     The unresolved matter is referred to the California bar authorities, together with relevant correspondence, and those documents shall be placed under seal, without prejudice as to a determination by the California bar authorities whether the matter should be disclosed.

FOR THE COURT

November 5, 2014                    /s/ Daniel E. O'Toole
Date                               Daniel E. O'Toole
                                   Clerk of Court

cc:  Michael Sundermeyer, William Burke, and Peter Anthony

**From:** "Chief Judge Rader, Randall R." <RR@cafc.uscourts.gov>
**Date:** March 5, 2014 at 3:24:12 PM EST
**To:** Edward Reines <edward.reines@weil.com>
**Subject: Congratulations**

Ed,

On Wednesday, as you know, the judges meet for a strictly social lunch. We usually discuss politics and pay raises. Today, in the midst of the general banter, one of my female colleagues interrupted and addressed herself to me. She said that she was vastly impressed with the advocacy of "my friend, Ed." She said that you had handled two very complex cases, back to back. In one case, you were opposed by Seth Waxman. She said Seth had a whole battery of assistants passing him notes and keeping him on track. You were alone and IMPRESSIVE in every way. In both cases, you knew the record cold and handled every question with confidence and grace. She said that she was really impressed with your performance. Two of my other colleagues immediately echoed her enthusiasm over your performance.

I, of course, pointed out that I had taught you everything you know in our recent class at Berkeley together . . . NOT! I added the little enhancement that you can do the same thing with almost any

1

topic of policy: mastering the facts and law without the slightest hesitation or pause!

In sum, I was really proud to be your friend today! You bring great credit on yourself and all associated with you!

And actually I not only do not mind, but encourage you to let others see this message.

Your friend for life, rrr

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

## FILED UNDER SEAL

---

**IN RE EDWARD R. REINES,**
*Respondent.*

---

14-MA004

---

Before PROST, *Chief Judge*, and NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, and HUGHES, *Circuit Judges.*[1]

PER CURIAM.

### ORDER

Pursuant to Rule 46 of the Federal Rules of Appellate Procedure and Rules 2(e) and 5(b) of the Federal Circuit Attorney Discipline Rules, this court issues a show cause order to Edward R. Reines, requesting that he show cause why he should not be disciplined for conduct unbecoming a member of the bar.

1. Rule 46 provides that a member of the bar of a court of appeals is subject to suspension or disbarment if he or she "is guilty of conduct unbecoming a member of the court's bar." Fed. R. App. P. 46(b)(1)(B). Similarly, any attorney who practices before the court may be subject to discipline "for conduct unbecoming a member of the bar."

---

[1]    Circuit Judge Rader is recused in this matter.

*Id.* 46(c). The Supreme Court has interpreted Rule 46 to "require[] members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice." *In re Snyder*, 472 U.S. 634, 644–45 (1985).

2. In determining whether an attorney's conduct constitutes "conduct unbecoming a member of the bar" within Rule 46, courts are to be guided "by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *Id.* at 645. These sources of guidance include the code of professional conduct promulgated by the attorney's home state bar. While state ethics rules "do[] not by [their] own terms apply to sanctions in the federal courts," a federal court "is entitled to rely on the attorney's knowledge of the state code of professional conduct." *Id.* at 645 n.6. Here, Mr. Reines is a member of the State Bar of California.

3. Rule 8.4(e) of the American Bar Association's Model Rules of Professional Conduct states that "[i]t is professional misconduct for a lawyer to . . . state or imply an ability to influence improperly a government agency or official to achieve results by means that violate the Rules of Professional Conduct or other law." Model Rules of Prof'l Conduct R. 8.4(e) (2013 ed.). "A lawyer who suggests that he or another lawyer is able to influence a judge or other public official because of a personal relationship violates Rule 8.4(e)." Laws. Man. on Prof. Conduct (ABA/BNA), at 101:703 (March 30, 2011). *See also* Cal. R. Prof'l Conduct 1-400 ("Advertising and Solicitation"); *id.* Standard 6 (creating a presumption that "[a] 'communication' in the form of a firm name, trade name, fictitious name, or other professional designation which states or implies a relationship between any member in private practice and a government agency or instrumentality" violates Rule 1-400).

4. The following has come to the court's attention: On or about March 5, 2014, then-Chief Judge Rader sent the attached email to you. *See* Attachment A. It has been alleged that you disseminated the attached email to clients and to potential clients in soliciting their business, implying a special relationship with the judge. If accurate, this allegation raises questions concerning a violation of Rule 46 of the Federal Rules of Appellate Procedure prohibiting conduct unbecoming a member of the bar. Moreover, this allegedly occurred during a time when you had cases pending before then-Chief Judge Rader.

5. The court directs you to show cause as to why these actions do not warrant disbarment, suspension, sanction, or other attorney discipline. In addition to addressing the possible ethical violation, your response should include the following information in the form of an affidavit or declaration: (1) whether you or anyone acting on your behalf disseminated this email to existing or potential clients; (2) if so, the dates of dissemination, names and addresses of the recipients, copies of any written communications that accompanied the emails, and any responses received from the email recipients or from people to whom it was forwarded following your dissemination.

Accordingly,

IT IS ORDERED THAT:

(1) Mr. Reines is directed to respond by July 7, 2014, why he should not be disciplined by this court.

(2) Pending further order of this court this order and the response shall be placed under seal.

FOR THE COURT

June 5, 2014
Date

Daniel E. O'Toole
Clerk of Court