# In the United States Court of Federal Claims

Nos. 25-11281, 25-11282
(Filed: June 2, 2026)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                             *
In re: Diana M. Parks                        *
In re: Hadeel Masseoud                       *
                                             *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER ON PETITION FOR REHEARING

On March 31, 2026, the Standing Panel on Attorney Discipline ("Standing Panel") issued a Final Order imposing discipline on Respondents, Diana M. Parks and Hadeel Masseoud. Final Order, *In re Masseoud*, No. 25-11282 (Fed. Cl. Apr. 1, 2026), ECF No. 11; *see also In re Parks*, No. 25-11281, 2026 WL 890145 (Fed. Cl. Mar. 31, 2026) (consolidated cases). The Standing Panel found that Respondents engaged in conduct unbecoming a member of this Court's bar under Rule 83.2(c)(5) of the Rules of the United States Court of Federal Claims ("RCFC"). Final Order at 13. Specifically, the Standing Panel determined that Ms. Masseoud knowingly made false statements regarding her bar admission status, failed to correct false statements made by Ms. Parks on her behalf regarding her bar admission status, and made false statements concerning her services in her biography on her law firm's website. *See id.* at 7–11. With respect to Ms. Parks, the Standing Panel determined that she knowingly made false statements about Ms. Masseoud's bar admission status, made false statements regarding her law firm's legal services on its website, and, as a law firm partner, failed to provide proper oversight over Ms. Masseoud. *Id.* at 11–13. The Standing Panel, therefore, suspended Respondents from the practice of law before the United States Court of Federal Claims for six months and required that they notify their clients and all other jurisdictions in which they are licensed of the imposed discipline. *Id.*

Respondents have filed a Petition for Rehearing with the Standing Panel. ECF No. 12. For the reasons set forth below, after carefully considering the Petition for Rehearing and the material provided in support thereof, the Standing Panel modifies the discipline imposed on Respondents.

## I.      RESPONDENTS' PETITION FOR REHEARING

On April 2, 2026, the Standing Panel received a motion from Respondents, styled as a motion for reconsideration under RCFC 59(a)(1). *Id.* at 1. However, RCFC 59 is not the correct rule under which to request review of a disciplinary decision. Rather, "reconsideration" of a final order in an attorney disciplinary proceeding is accomplished through a petition for rehearing

under RCFC 83.2(j). Accordingly, the Standing Panel construes Respondents' motion as a petition for rehearing.[1]

In their petition, Respondents "expressly acknowledge their wrongdoing and that sanctions are appropriate" and state that they "do not seek to relitigate the [Standing Panel's] findings of misconduct." *Id.* Instead, Respondents "request reconsideration of the severity and practical effect of the sanction[s] imposed." *Id.* Respondents assert that "[d]epriving them of the ability to practice for six months will not only disrupt their clients' claims but will also place th[eir] small boutique and fully woman-owned firm at substantial risk of closure." *Id.* at 5. According to Respondents, "[t]he firm's client base, revenue, and ongoing matters are inextricably tied to Respondents' ability to appear before this Court and continue to practice law," and "[a] sustained inability to do so for fully six months . . . will immediately disrupt active representations, erode client relationships, halt all work, and eliminate the firm's primary source of revenue." *Id.* at 6. In sum, Respondents contend that, "[w]hen combined with reciprocal discipline in Georgia and New York, the sanction will likely prevent Respondents from practicing law," and that this "outcome far exceeds what is necessary to serve the purposes of attorney discipline . . . particularly where there has been no finding of client harm and where Respondents have undertaken substantial corrective measures." *Id.* at 7. For relief, Respondents request that the Standing Panel "impose a reduced form of discipline, such as a public reprimand, probation[,] or a short suspension conditioned on compliance measures," which Respondents posit "would reflect the seriousness of the issues identified, account for Respondents' remorse and corrective actions, align with governing precedent, and avoid disproportionate and practice-ending consequences." *Id.* at 12.

Incongruously, despite expressly acknowledging their wrongdoing, accepting that sanctions are warranted, and stating that they do not seek to relitigate the Standing Panel's findings, *see id.* at 1, only a few days later, Respondents filed a supplement to their petition in which they challenge the Standing Panel's procedures and findings, ECF No. 14. Therein, Respondents first argue that they "were not afforded a meaningful opportunity to prepare and present evidence addressing [the website] issue" because "the website issue was not identified in the referral or disclosed prior to the hearing." ECF No. 14 at 2. Consequently, Respondents allege a due process violation and assert that they "were deprived of a fair opportunity to develop the record on a matter that the [Standing Panel] ultimately relied upon in assessing an aggravating factor affecting the severity of the sanction." *Id.* at 3. Second, Respondents contend that the Standing Panel improperly found that their conduct was undertaken with a self-interested motive and that such a finding lacks evidentiary support. *Id.* at 4–8. In sum, Respondents argue that "[t]he findings that Respondents engaged in a pattern of misconduct and acted with a dishonest or selfish motive were central to the [Standing Panel's] sanctions analysis and

---

[1] In addition to their petition for rehearing, Respondents filed an emergency motion to stay or, in the alternative, extend the deadlines for client notification and reporting obligations. ECF No. 13. The Standing Panel granted Respondents' motion to stay the client notification and reporting obligations on April 8, 2026. ECF No. 15. Thereafter, in response to a letter from Respondents' counsel received on April 15, 2026, ECF No. 16, the Standing Panel retroactively stayed Respondents' suspensions to allow for meaningful consideration of Respondents' motion for reconsideration and supporting documents, ECF No. 17 at 1.

materially increased the severity of the discipline imposed," and "[b]oth findings are affected by the procedural and evidentiary deficiencies." *Id.* at 8. According to Respondents, "[w]ithout the website material, the record does not support a finding of a sustained pattern over time," and "[w]ithout evidentiary support for a dishonest or selfish motive, the basis for that aggravating factor is not established." *Id.* The Standing Panel will address Respondents' due process, motive, and proportionality arguments in turn before addressing modification of the discipline imposed.

A.      **Due Process**

Respondents' due process arguments are unpersuasive. In support of their challenge relating to the website issue, Respondents rely on a United States Supreme Court case, *In re Ruffalo*, 390 U.S. 544 (1968), to argue that the Standing Panel was required to inform Respondents of the website issue before the hearing and "that introducing [the website issue] during the hearing itself [was] inconsistent with fundamental fairness." ECF No. 14 at 3. But the present case is readily distinguishable from *In re Ruffalo*. In that case, the disciplinary body leveled an additional charge on the attorney (1) only after he had finished testifying in a multi-day hearing, giving him little meaningful opportunity to respond; (2) based on the attorney's defense to the existing charges, creating a "false sense of security" and an inescapable trap; and (3) without taking any further facts relating to that charge. *See In re Ruffalo*, 390 U.S. at 546–50. By contrast, here (1) Respondents were informed of the Standing Panel's concerns regarding information on Respondents' website early in their testimony before the Standing Panel; (2) the website issues involved misrepresentations of Respondents' bar admissions—the central topic of the hearing—and arose from the Standing Panel's investigation of Respondents' misrepresentations, rather than from any defenses Respondents offered; and (3) the Standing Panel gave Respondents ample time to both testify at the hearing regarding *their* website and file a supplemental brief after the hearing on the issues raised at the hearing. *See, e.g.*, ECF No. 8 at 17:7–8 (the Standing Panel first raising the website issue), 18:8–23:7 (the Standing Panel relating the website issue to the Respondents' misrepresentation), 105:1–5 (counsel requesting additional briefing time on the website issue), 109:18–21 (granting the additional briefing). In other words, Respondents were given notice of the allegation that they misrepresented bar admission information on their website by having the issue raised at the hearing. Furthermore, Respondents were given a fair opportunity to be heard through both testimony at the hearing and the opportunity to file a supplemental brief, of which Respondents availed themselves. *See* ECF No. 9. The present case simply does not present the same fundamental fairness issues as the trap laid in *In re Ruffalo*.

Next, Respondents argue that they "were not afforded a meaningful opportunity to prepare and present evidence addressing [the website] issue." ECF No. 14 at 2. This is incorrect. The Standing Panel's July 2, 2025, letter put Respondents on notice of the Standing Panel's charge of "conduct that is unbecoming a member of the bar of this court" relating to "Ms. Masseoud's participation in matters without admission to this [C]ourt's bar," and "misrepresentation of Ms. Masseoud's admission status in other jurisdictions." ECF No. 3 at 1. This notice sufficed to alert Respondents that the Standing Panel was investigating representations made regarding Ms. Masseoud's bar admission status. The fact that the Standing Panel, just one week after having appointed an investigator, was not aware of every single instance of misrepresentation does not excuse Respondents from having to answer for that

3

misconduct. Furthermore, as observed above, Respondents testified in response to the website issue at their misconduct hearing and were given the opportunity to develop a factual record in supplemental briefing. Rather than attempting to justify or otherwise explain the erroneous bar admissions information on the website, Respondents' supplemental brief merely notes that Respondents removed the erroneous content from their website without offering any additional facts or requesting further time, briefing, or testimony to develop additional facts. ECF No. 9 at 5–6. Finally, the Standing Panel is unpersuaded by Respondents' assertion that they lacked notice of the content of their own website. *See* ECF No. 14 at 2 ("[A]t no point was the evidence relied on by the Court concerning the website issue placed in the record or provided to Respondents."). Respondents acknowledged at the hearing that the website information regarding "Bar Admissions" was incorrect, *see* ECF No. 8 at 18:8–20:14, 66:10–68:8, and that they were in full possession of their website information and history, *see id.* at 68:8–23. This is not a case where the Standing Panel blindsided Respondents with surprise third-party evidence.

In any case, Respondents overstate the centrality of the website issue in the Standing Panel's aggravating factor analysis. Specifically, Respondents argue that the website issue "played a central role in extending the conduct at issue across multiple years and supporting the conclusion that Respondents engaged in a sustained pattern, rather than isolated instances[,] of misconduct." ECF No. 14 at 4. This is simply not the case. As the Final Order lays out, Respondents made similar misrepresentations to three different judges of this Court, in April 2022, May 2024, and May 2025. Final Order at 5–7. These are not isolated incidents, and, in fact, Respondents' email to Judge Horn explicitly relied on their previous misrepresentation to Judge Holte. *See id.* at 6 ("I will be submitting an application for admission shorty [sic] and have been permitted to argue before this Court with no issues in another matter before Judge Holte." (quoting ECF No. 4 at 57–58)). Even disregarding Respondents' website content, the Standing Panel still finds that Respondents' pattern of misconduct over a long period of time is an aggravating factor. Accordingly, the website issue was *not* "central" to this finding.

### B.     Motive

Next, Respondents challenge the Standing Panel's finding that "the misrepresentations at issue in this case were seemingly made with a dishonest or selfish motive to obtain permission to argue before the Court and solicit business from potential clients." *Id.* at 16. In support of their petition, Respondents mischaracterize the Final Order's discussion of motive in two ways. First, Respondents object to the finding that their conduct was motivated, in part, by the desire to solicit business. They argue that "apart from the website statements, the communications cited by the Court did not arise in any client development or marketing context." ECF No. 14 at 5. To be clear, the Standing Panel concluded that: (1) Respondents' misrepresentations of their bar admissions to various judges were for the purpose of obtaining permission to argue before the Court; and (2) their website misrepresentations were for the purpose of soliciting business from clients seeking representation in various jurisdictions. *See* Final Order at 16 ("[She] violated the duty of candor, engaged in dishonest conduct, and made false and misleading communications to the public regarding her services via the law firm website . . . ."). But regardless of motive, it cannot be disputed that false statements regarding Ms. Masseoud's bar admission status were made to the Court and, through Respondents' firm website, to the public. Such false statements warrant discipline.

4

Second, Respondents argue that the Final Order improperly imputed a common motive to both Respondents without "evidence that each knowingly participated in a common course of conduct with a shared objective." ECF No. 14 at 6. This objection ignores the Final Order's separate evaluations of each Respondent's culpability and knowledge. *See* Final Order at 7–11 (Ms. Masseoud), 11–13 (Ms. Parks). Having established both Respondents' individual culpability, the Standing Panel did not have a duty to find "a common motive" or "shared objective." *See* ECF No. 14 at 6–7. The Standing Panel did not conclude that Respondents *conspired* to engage in misconduct for selfish motives or to solicit business; instead, the Standing Panel found that Respondents individually engaged in similar misconduct and seemingly for the same reason. Specifically, as found in the Final Order, Ms. Parks made misrepresentations to Judge Holte in April 2022 and Judge Schwartz in May 2025 with the motive to obtain permission for Ms. Masseoud to argue before the Court, and Ms. Masseoud made a similar misrepresentation to Judge Horn in May 2024 with the motive to obtain permission to argue before the Court. *See* Final Order at 10–12. In so doing, the Standing Panel did not "presume that [Respondents] share the same subjective intent merely because they were involved in the same matter." ECF No. 14 at 6. Rather, the Standing Panel made explicit and separate findings that both Respondents took actions that evinced the same motive, namely, to gain permission for Ms. Masseoud to argue before the Court without admission to the Court's bar. *See* Final Order at 10–13. These findings are enough. The Standing Panel did not—and was not required to—make any finding as to coordination, conspiracy, or a shared objective.

## C.     Proportionality

Finally, Respondents argue that their punishments are disproportionate when compared to three cases Respondents identify. The Standing Panel is not persuaded by Respondents' proffered cases, individually or collectively. Respondents first identify *In re Reines*, 771 F.3d 1326 (Fed. Cir. 2014). ECF No. 12 at 8. In that case, the Federal Circuit, sitting *en banc*, issued a public reprimand of an attorney who forwarded dozens of clients a highly complimentary email he received from the then-Chief Judge of the circuit. *In re Reines*, 771 F.3d at 1328–29. The Federal Circuit concluded that forwarding the email to current and prospective clients was improper because it suggested that the attorney possessed the ability to improperly influence the Chief Judge. *See id.* at 1331–32. The *In re Reines* court noted several mitigating circumstances, including the attorney's clean disciplinary record, his history of service to the court, his recognition of the mistake and remorse, the implicit (rather than explicit) nature of the improper message, and the fact that the Chief Judge's email invited the attorney to share the message with others. *Id.* at 1332. It seems the primary aggravating circumstance noted by the Federal Circuit was the attorney's apparent attempts during the disciplinary proceedings to downplay the closeness of his relationship with the Chief Judge. *Id.*

The Standing Panel is not convinced by Respondents' comparison to *In re Reines* because that case is exceedingly different from the current case. There, the attorney at issue forwarded a single email with improper implications to current and prospective clients over a short period of time, *see id.* at 1329; whereas, here, Respondents made misrepresentations *to several judges* over *multiple years*. Moreover, the Standing Panel must note that while the attorney in that case received a public reprimand, the email at issue in *In re Reines* "ultimately led to Judge Rader's resignation from the court." Michael E. McCabe, Jr., *CAFC Disciplines*

5

*Patent Litigator Who Forwarded Former Chief Judge's "BFF" Email To Clients*, McCabe Ali LLP, https://ipethicslaw.com/cafc-disciplines-patent-litigator-who-forwarded-former-chief-judges-bff-email-to-clients/ (last visited May 26, 2026). Thus, while the attorney at issue may have only received a public reprimand, there were ultimately very serious consequences for the conduct at the root of that proceeding. In sum, the cases are hardly comparable, and therefore the Standing Panel is not persuaded that the discipline in this case should be similar.

Respondents next cite *In re James Ferrell*, No. 13-11166 (Fed. Cl. Feb. 4, 2016). ECF No. 12 at 10. According to Respondents, in that case, a Standing Panel of this Court issued a public reprimand of an attorney who

> was accused by his own client of providing inadequate representation, including failing to communicate during the pendency of the claim and failing to maintain adequate records. The Standing Panel further found that Mr. Ferrell failed to properly withdraw as counsel in compliance with the Court's rules governing attorney-client relationships, conduct which the Court expressly concluded constituted "conduct unbecoming a member of the bar or this court" under RCFC 83.2(c)(5).

*Id.* The Standing Panel does not find Respondents' reliance on *In re Ferrell* persuasive for at least two reasons.

First, Respondents mischaracterize the Standing Panel's findings in that case. In Respondents' retelling of the case, the Standing Panel "***further found*** that Mr. Ferrell failed to properly withdraw as counsel . . . ." ECF No. 12 at 10 (emphasis added). The problem with this statement is that the Standing Panel ***only*** found that Mr. Ferrell failed to properly withdraw as counsel. *See* Order of Reprimand, *In re Ferrell*, No. 13-11166, ECF No. 8 at 1–2 (finding that Mr. Ferrell failed to properly withdraw).[2] Unlike the implication of Respondents' recitation, the Standing Panel did not find that Mr. Ferrell "fail[ed] to communicate during the pendency of the claim and fail[ed] to maintain adequate records." *Compare id.*, *with* ECF No. 12 at 10. In other words, in order to "further find" that Mr. Ferrell failed to properly withdraw as counsel, the Standing Panel would have had to ***first*** find that Mr. Ferrell failed to communicate with his client and maintain adequate records. But that did not happen. If this implication was not clear enough from the above-quoted text, Respondents' discussion of *In re Ferrell* states in the plural that the case involved "client-related deficiencies and failures." ECF No. 12 at 10. Yet, the case only involved a single deficiency or failure. The Standing Panel finds this mischaracterization of the facts of *In re Ferrell* troubling in a petition for rehearing related to discipline for misrepresentations to the Court. *See* RCFC 11(b). But more importantly, for present purposes, it is one reason why *In re Ferrell* is inapposite.

Second, Respondents argue that the infraction at issue in *In re Ferrell* is more serious than what is at issue here because the infraction in that case "implicat[ed] core professional obligations owed to a client, not merely issues relating to representations to the Court." ECF No.

---

[2] Also available at https://www.uscfc.uscourts.gov/sites/cfc/files/13-11166_discipline_opinion.pdf

12 at 10. That is a flippant dismissal of the severity of Respondents' conduct and the "core professional obligations" attorneys likewise owe to the judges before whom they appear. But neither this flip dismissal nor *In re Ferrell* do anything to help Respondents' arguments regarding proportionality of the discipline they received.

Implicit in Respondents' choice of these two comparison cases is their view that misconduct that harms clients is more severe than Respondents' misrepresentations to judges. This mistaken view ignores the reality that "attorneys are the filter upon which courts rely to maintain the integrity of, and trust in, our judicial process," and thus misrepresentations by attorneys to the courts seriously undermine the integrity of the judicial process. *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010). Although the Standing Panel takes no position about the relative seriousness of these offenses, it must emphasize a point that bears repeating: attorneys owe significant duties to both their clients *and* the courts and judges before whom they appear. Misrepresentations are unacceptable in any of these relationships, and the absence of direct "client harm," ECF No. 12 at 10, does not excuse Respondents' misconduct.

Respondents' final case, which they argue is "materially distinguishable" from the present case, is *DCD Programs, Ltd. v. Leighton*, 846 F.2d 526 (9th Cir. 1988). ECF No. 12 at 11. In that case, the Ninth Circuit suspended an attorney for two months based on misrepresentations he made in briefing and at oral argument on an issue at the heart of an appeal. *See DCD Programs*, 846 F.2d at 527–28. The Ninth Circuit emphasized that "counsel's professional duty requires scrupulous accuracy in referring to the record," and a "[l]ack of diligence which impairs the deliberations of the court is sufficient" to justify attorney discipline. *Id.* at 528 (citations omitted). Respondents distinguish *DCD Programs* based on the fact that the misconduct went to the merits of the case, whereas Respondents claim that their conduct did not "affect[] a case outcome, impair[] judicial deliberations, or prejudice[] any party."[3] ECF No. 12 at 11. While Respondents are correct insofar as their misrepresentations did not relate to the merits of a case, *DCD Programs* hurts, rather than helps, their argument that their sanction is disproportionate. In that case, the attorney at issue made a handful of imprecise references in a single appeal and confessed to his error when confronted. *See DCD Programs*, 846 F.2d at 527–28. By contrast, Respondents made misrepresentations to three judges in three cases over three years. This conduct is certainly "distinguishable," but not in Respondents' favor.

In virtually every disciplinary proceeding, a thorough search of past cases will reveal examples of sanctions that may appear both more lenient and more severe than the case under consideration. As in every case, the Standing Panel looks to the facts of the particular case and any aggravating and mitigating factors. *See In re Reines*, 771 F.3d at 1332. Here, the Standing Panel considered Respondents' conduct, aggravating and mitigating factors, and Respondents' arguments about appropriate sanctions. Ultimately, the Standing Panel is not persuaded that the suspensions imposed by the Final Order are disproportionate to Respondents' offenses. The Respondents' pattern of conduct identified in the Final Order is unbecoming a member of this Court's bar. *See* RCFC 83.2(c)(5). Nonetheless, the Standing Panel appreciates Respondents'

---

[3] The Standing Panel has no information before it regarding whether this claim is accurate other than to note that Respondents' conduct likely slowed consideration of the case before Judge Schwartz from which this misconduct complaint originally arose.

demonstrations of remorse and is sympathetic to the concerns regarding their law firm's future. Therefore, as discussed below, the Standing Panel will modify the sanctions imposed on Respondents.

## II.    MODIFIED DISCIPLINE FOR RESPONDENTS' CONDUCT

Notwithstanding the arguments in ECF No. 14, Respondents have expressed what appears to be genuine remorse for the conduct at issue in this disciplinary proceeding. *See* ECF No. 12 at 2–4. It is unfortunate that this has come only after the Standing Panel issued its Final Order sanctioning Respondents. Yet, the Standing Panel credits Respondents for their expressions of remorse and for the concrete steps they are taking to avoid repeating the conduct that led to this point. *See, e.g.*, *id.* at 3–4 (detailing that Respondents have "implemented concrete, structural changes to their practice designed specifically to prevent recurrence"). In addition, Respondents argue for the first time in their Petition for Rehearing that concurrent suspensions of both Respondents would likely lead to the dissolution of their small law firm. *See id.* at 5–7. Although Respondents were given the chance in supplemental briefing to present arguments about potential sanctions, this argument was absent from the many arguments they previously presented. *See* ECF No. 9 at 6–8 (presenting arguments on a "possible sanction"). And while there is not a carveout from sanctions for small firms or solo practitioners, the Standing Panel recognizes, based on Respondents' new argument, that concurrent suspensions could disproportionately impact Respondents' firm. Lastly, solely in the interest of finality, the Standing Panel removes the website issue as a component of an aggravating factor and a basis of the sanctions imposed on Respondents. Accordingly, the Standing Panel will modify Respondents' sanctions based only on their misrepresentations to several judges of this Court.

As detailed above and as conceded by Respondents, *see* ECF No. 12 at 1, the Standing Panel finds that discipline is still warranted as to both Respondents. With respect to Ms. Masseoud, the Standing Panel finds that her conduct warrants a four-month suspension and completion of six hours of continuing legal education ("CLE"), which shall be in professional responsibility and ethics. This CLE shall be in addition to any CLE Ms. Masseoud is already required to complete to maintain licensure and shall be completed within forty-five days of this order, or else Ms. Masseoud's original six-month suspension may be reinstated. Ms. Masseoud shall file a notice with the Court certifying that she has completed this CLE requirement and attaching thereto any certificates or other documentation of attendance.

This modification of the discipline imposed is due, in part, to a declaration attached to Respondents' Motion in which Ms. Masseoud "take[s] full responsibility for the conduct addressed in the Court's Final Order" and states that she "deeply regret[s] that [her] actions and omissions fell short of the standards expected of an officer of the Court." ECF No. 12-2 ¶ 3. Ms. Masseoud further acknowledges that she "failed to apply the degree of care, attention, and follow-through required to ensure that all representations to the Court concerning bar status, admissions, and related matters were fully accurate, complete, and timely corrected where necessary," and that she "understand[s] that even inadvertent inaccuracies or a failure to promptly clarify misunderstandings can erode the Court's confidence in counsel and affect the integrity of the judicial process." *Id.* ¶¶ 4–5. Ms. Masseoud states that she is "committed to ensuring that this does not occur again." *Id.* ¶ 10. While her expression of remorse and

implementation of corrective measures would have been better received as part of the initial response to the attorney-discipline inquiry, the Standing Panel nevertheless finds that this modification is appropriate.

With respect to Ms. Parks, the Standing Panel finds that her conduct warrants a four-month suspension and completion of six hours of CLE in professional responsibility and ethics. This CLE shall be in addition to any CLE Ms. Parks is already required to complete to maintain licensure and shall be completed within forty-five days of this order, or else Ms. Parks' original six-month suspension may be reinstated. Ms. Parks shall file a notice with the Court certifying that she has completed this CLE requirement and attaching thereto any certificates or other documentation of attendance.

As with Ms. Masseoud, this modification of the discipline imposed is due, in part, to a declaration attached to Respondents' Motion in which Ms. Parks states that she is "profoundly remorseful for the conduct that gave rise to this proceeding" and that she has "implemented concrete, meaningful corrective measures in [her] role as managing partner of Curran Legal to ensure that such conduct does not recur." ECF No. 12-3 ¶ 14. Such corrective measures "include requiring all licensed attorneys at the firm to execute the 'Attorney Acknowledgment and Certification of Permanent Practice Reforms . . . .'" *Id.* As noted above, the Standing Panel would have preferred an assumption of responsibility and expression of remorse as part of the initial response to the attorney-discipline inquiry; nevertheless, the Standing Panel finds that this modification is appropriate.

In addition, given Respondents' representations that concurrent suspensions would be devastating for their small law firm, Respondents will serve their suspensions in sequence. Ms. Masseoud will serve her suspension first, followed immediately thereafter by Ms. Parks. This modification will not affect the deadline for Respondents to notify their clients and all other jurisdictions in which they are licensed of the imposed discipline.

## III.   CONCLUSION

For the foregoing reasons, the Standing Panel modifies the discipline imposed on Respondents under the Final Order, as follows:

- The six-month suspension previously imposed on Ms. Masseoud is reduced to a **four-month suspension**. In addition, Ms. Masseoud shall complete **six hours of CLE** in professional responsibility and ethics. This CLE requirement shall be in addition to any CLE Ms. Masseoud is already required to complete to maintain licensure and shall be completed within **forty-five days** of this order. Within **ten days** of completing this CLE requirement, Ms. Masseoud shall file a notice with the Court certifying that she has completed the CLE requirement and attaching thereto any certificates or other documentation of attendance. Failure to timely file this notice may result in the reinstatement of Ms. Masseoud's original six-month suspension. Ms. Masseoud's suspension shall take effect immediately and terminate on October 2, 2026.

- The six-month suspension previously imposed on Ms. Parks is reduced to a **four-month suspension**. In addition, Ms. Parks shall complete **six hours of CLE** in professional responsibility and ethics. This CLE requirement shall be in addition to any CLE Ms. Parks is already required to complete to maintain licensure and shall be completed within **forty-five days** of this order. Within **ten days** of completing the CLE requirement, Ms. Parks shall file a notice with the Court certifying that she has completed the CLE requirement and attaching thereto any certificates or other documentation of attendance. Failure to timely file this notice may result in the reinstatement of Ms. Parks' original six-month suspension. Ms. Parks' suspension shall take effect on October 3, 2026, and terminate on February 3, 2026.

Within **fourteen days** of the issuance of this order, both Respondents **SHALL NOTIFY** their clients and all other jurisdictions in which they are licensed of the imposed discipline. Pursuant to RCFC 83.2(h)(7), the Clerk of the Court is **DIRECTED** to notify the National Disciplinary Data Bank of the discipline imposed by the Standing Panel against Respondents in this order. The filing of a petition for reinstatement shall be governed by RCFC 83.2(k)(1).

**IT IS SO ORDERED**.

s/ Thompson M. Dietz
THOMPSON M. DIETZ
Judge

s/ Philip S. Hadji
PHILIP S. HADJI
Judge

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge